ALTSHULER BERZON LLP
MICHAEL RUBIN          CA Bar No. 080618
MATTHEW MURRAY          CA Bar No. 271461
CONNIE CHAN            CA Bar No. 284230
177 Post St., Ste. 300
San Francisco, CA  94108
Telephone:  (415) 421-7151
Facsimile:  (415) 362-8064
mrubin@altber.com
mmurray@altber.com
cchan@altber.com

KEMNITZER, BARRON, & KRIEG, LLP
ADAM MCNEILE          CA Bar No. 280296
KRISTIN KEMNITZER        CA Bar No. 278946
42 Miller Ave., 3rd Floor
Mill Valley, CA  94941
Telephone:  (415) 632-1900
Facsimile:  (415) 632-1901
adam@kbklegal.com
kristin@kbklegal.com

Attorneys for Plaintiffs and the Proposed Class

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROLAND OOSTHUIZEN and ROSEMARY MATHEWS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BANK OF AMERICA, N.A.; and DOES 1 through 30, inclusive,<br><br>Defendants.<br><br>_____/ | **Case No.**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **Violations of California Consumer Privacy Act**<br>2. **Violations of California Customer Records Act**<br>3. **Violations of California Unfair Competition Law**<br>4. **Negligence and Negligence Per Se**<br>5. **Breach of Fiduciary Duty**<br>6. **Breach of Contract**<br>7. **Breach of Implied Contract**<br>8. **Breach of the Implied Covenant of Good Faith and Fair Dealing**<br>9. **Breach of Contract (Third-Party Beneficiaries)**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Roland Oosthuizen ("Oosthuizen") and Rosemary Mathews ("Mathews" and collectively "Plaintiffs"), on behalf of themselves and all other similarly situated individuals whose California unemployment insurance ("UI") and other public benefits are or were paid through bank debit cards issued by Defendant Bank of America, N.A. ("Bank of America," "Bank," or "Defendant"), bring this class action against Bank of America for breach of contract, negligence, and other state common law and statutory claims to remedy Bank of America's egregious maladministration of its obligations under the California Employment Development Department's ("EDD") benefits payment programs. In violation of the Bank's common law and statutory obligations to Plaintiffs and class members, both directly and as third party beneficiaries of the contract between the Bank and EDD, Defendant Bank of America has deprived Plaintiffs and class members of their statutory right to UI and other benefits when due, and has permitted, countenanced, and failed to take reasonable steps to protect Plaintiffs and class members from fraud and to take reasonable steps to ensure that Plaintiffs and class members are able to receive and retain access to the public benefits to which they are lawfully entitled.

## I.      INTRODUCTION

1.      Like millions of other Californians, Oosthuizen and Mathews lost their jobs through no fault of their own during the COVID-19 pandemic, applied for unemployment insurance and other benefits through programs administered by California's Employment Development Department ("EDD"), and were declared eligible to receive, and initially did receive, the benefits to which they were lawfully entitled.

2.      Pursuant to an exclusive contract between EDD and Defendant Bank of America, Plaintiffs and class members received their periodic benefits payments not from EDD directly, but through a bank debit card issued by Bank of America. Although Bank of America could have provided reasonable protection against fraudulent access to the debit card accounts of Plaintiffs and class members by maintaining secure access to their data and by using on those Plaintiffs' and class members' debit cards the same EMV chip technology that the Bank has used on all other Bank of America-issued debit and credit cards to its other customers since 2014, the Bank

Class Action Complaint

1    failed to engage in the necessary and reasonable steps needed to secure Plaintiffs' and class

2    members' data and accounts, including by using outdated magnetic stripe technology on their

3    debit cards, which made those cards readily susceptible to cloning and other schemes to enable

4    others to fraudulently gain access to Plaintiffs' and class members accounts.

5    3.       Not only did the Bank act negligently and in breach of its statutory and common law

6    duties and obligations to Plaintiffs and class members by failing to protect their debit cards and

7    debit card accounts from being fraudulently accessed by others, but the Bank also violated its

8    duties and obligations to Plaintiffs and class members by failing to have in place reasonable

9    systems, measures, and protections to permit prompt and effective identification of fraud,

10   notification of fraud, access to already approved benefits during the course of any investigation

11   into fraud, prompt and accurate resolution of fraud claims, and prompt reimbursement to

12   Plaintiffs and class members of any funds wrongfully taken from their accounts due to fraud or

13   suspected fraud.

14   4.       Bank of America purports to have a "Zero Liability" policy, guaranteed by its contracts

15   with Plaintiffs and class members, to protect such individuals from fraud and to ensure that such

16   individuals will not suffer any adverse financial consequences if their accounts or account

17   balances are fraudulently accessed by third parties. On information and belief, the Bank has not

18   implemented this policy as promised, and has caused Plaintiffs and class members to suffer

19   significant financial losses as a result of third-party fraud, including by failing to have reasonable

20   and appropriate procedures to identify and receive notifications of fraud, failing to adequately

21   monitor its customer service telephone phone, closing fraud investigations without conducting

22   reasonable and appropriate review, failing to extend provisional credit to Plaintiffs and class

23   members as required by law while fraud investigations are underway or after fraud is, or

24   reasonably should have been, determined, and freezing the debit card accounts of Plaintiffs and

25   class members unnecessarily, thereby depriving them of benefits to which they have already

26   been found eligible as well as ongoing and future benefits to which they are eligible.

27   5.       By the acts and omissions alleged here, Bank of America has violated California's

28   Consumer Privacy Act, Customer Records Act, and Unfair Competition Law, acted negligently

1   and in breach of its fiduciary duties, and breached its cardholder agreement contracts with

2   Plaintiffs and class members and its contract with EDD to which Plaintiffs and class members

3   are third party beneficiaries.  These acts and omissions have caused substantial financial and

4   other harm to Plaintiffs and class members, and unless promptly enjoined will cause immediate

5   and irreparable harm to such individuals and to the public.

6                          **II.     JURISDICTION AND VENUE**

7   6.      This Court has subject matter jurisdiction pursuant to: (a) 28 U.S.C. § 1332(d) because

8   this is a class action in which the amount in controversy exceeds $5,000,000, there are more than

9   100 putative class members, and the majority of putative class members are citizens of a state

10   different than the state of which Bank of America is a citizen; (b) 28 U.S.C. § 1332(a) because

11   Plaintiffs and class members are citizens of California, Bank of America is incorporated under

12   the laws of Delaware and has its principal place of business in North Carolina, and the amount in

13   controversy exceeds $75,000; and (c) supplemental jurisdiction under 28 U.S.C. § 1367 with

14   respect to the claims for relief arising under state law.

15   7.      This Court has specific personal jurisdiction over Bank of America because the Bank has

16   sufficient minimum contacts with California, has purposely availed itself of the benefits and

17   protection of California law, and conducts a substantial amount of business in and with the State

18   of California (with EDD), such that the Court's exercise of personal jurisdiction over the Bank

19   accords with due process.

20   8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial

21   portion of the acts or omissions giving rise to the claims alleged occurred in this District, and

22   because Defendant is subject to the Court's personal jurisdiction with respect to this action.

23                          **III.     THE PARTIES**

24        **A.  Plaintiffs**

25   9.      Plaintiff Rosemary Mathews is a person residing in Lawndale, California. She lost her

26   employment with the Staples Center catering department and with a yoga studio in March 2020

27   due to the COVID-19 pandemic. She applied for, was eligible for, and received EDD

28   unemployment benefits after losing her jobs, and soon thereafter received a Bank of America

1   EDD Visa debit card with a magnetic stripe but no EMV chip to use to access her benefits. In or

2   about October 2020, Mathews was the victim of an unauthorized transaction on her card in the

3   amount of $1,000, despite her having maintained exclusive physical possession of that card.  On

4   information and belief, Mathews alleges that her account was fraudulently accessed by a third

5   party as a result of Bank of America's inadequate fraud prevention policies. Despite the Bank's

6   "Zero Liability" policy and Mathews' repeated requests for assistance and documentation of the

7   fraudulent withdrawal of funds from her account, Bank of America has been either unwilling or

8   unable to restore the missing funds to her account. Instead, the Bank froze her account, depriving

9   her of access to the UI funds in that account for which EDD had previously found her eligible

10   and that it had authorized the Bank to pay, and further depriving her of any UI benefits payments

11   since on or about December 7, 2020.

12   10.     Plaintiff Roland Oosthuizen is a person residing in Lawndale, California. He was

13   furloughed from his job working for ABM at Los Angeles International Airport in or about April

14   2020 due to the COVID-19 pandemic. He applied for, was eligible for, and received EDD

15   unemployment benefits after being furloughed and soon thereafter received a Bank of America

16   EDD Visa debit card with a magnetic stripe but no EMV chip to use to access his benefits. In or

17   about September 2020, Oosthuizen was the victim of five separate unauthorized transactions on

18   his card on five successive days in the amount of $1,000 each, despite his having maintained

19   exclusive physical possession of that card.  On information and belief, Oosthuizen alleges that

20   his account was fraudulently accessed by a third party as a result of Bank of America's

21   inadequate fraud prevention policies. Despite the Bank's "Zero Liability" policy and

22   Oosthuizen's repeated requests for assistance and documentation of the fraudulent withdrawal of

23   funds from his account, Bank of America has been either unwilling or unable to restore the

24   missing funds to his account.

25   **B. Defendant**

26   11.     Defendant Bank of America, N.A., is a financial institution incorporated in the State of

27   Delaware and headquartered in North Carolina that conducts a substantial amount of business,

28   including pursuant to its exclusive contract with the State of California and the State EDD to

1    administer UI benefit payments through Bank-issued debit cards as alleged herein.

2                              **IV.   FACTUAL ALLEGATIONS**

3    12.     EDD is an agency of the State of California that is responsible for administering

4    numerous benefits programs for low-income, unemployed, and other Californians, including

5    programs providing unemployment insurance benefits, disability insurance benefits, paid family

6    leave benefits, pandemic unemployment assistance benefits, and pandemic emergency

7    unemployment compensation benefits to Californians (collectively, "EDD benefits").

8    13.     In 2010, Defendant Bank of America entered into an exclusive contract with the State of

9    California and EDD to issue Bank of America debit cards through which individuals entitled to

10   receive EDD benefits could access those benefits.

11   14.     On information and belief, EDD obtained that contract by falsely representing to EDD

12   that it would provide "best-in-class" fraud monitoring.

13   15.     Beginning in or about July 2011, EDD began distributing EDD benefits, including UI

14   benefits, to eligible recipients pursuant to its contract with Bank of America by having payment

15   through the Bank's EDD debit cards, rather than paper checks or other forms of payment, be the

16   default option for EDD benefits recipients to receive those benefits.

17   16.     In or about 2015, Bank of America submitted a proposal to EDD to extend the scope and

18   duration of its exclusive contract to use Bank debit cards to pay EDD benefits. In that proposal,

19   the Bank represented that it has applied and will continue to apply "the most rigorous fraud

20   detection procedures," including "the highest level of security and fraud safeguards" based on

21   "multiple layers of extensive security" to ensure that EDD benefits recipients who receive and

22   maintain EDD benefits funds through their Bank-issued debit cards do not become the victims of

23   fraud and are fully protected if they did become victims.  The Bank's proposal also represented

24   that the Bank has and will provide "fraud monitoring" as part of its "multi-faceted" approach to

25   preventing and combatting fraud, and that it would provide "immediate response to emerging

26   fraud trends" that would ensure that fraudulent transactions would be "declined in real time." On

27   information and belief, EDD granted the requested contract extension in reliance upon these

28   representations.

17.     On information and belief, Bank of America has failed to maintain, store, share, or transfer EDD benefits recipients' account data and other financial data and account information in a reasonably secure manner and consistent with the Bank's obligations to EDD and to Plaintiffs and class members. As a result of this failure, on information and belief, those benefits recipients' data and account information has been obtained, copied, and stolen by unauthorized third parties in a series of security breaches that have allowed millions of dollars to be stolen from the EDD and benefits recipients through a series of unauthorized transactions.

18.     A decade ago, after Bank of America entered into its 2010 exclusive contract with EDD as alleged herein, Bank of America began using what was then a new technology, using EMV chips rather than magnetic stripe technology, to protect certain of its account card holders from fraudulent access to the card holders' accounts. On September 30, 2014, after determining that EMV chip technology was a far more effective anti-fraud mechanism than the outdated magnetic stripe technology, the Bank announced that it would use EMV chip technology on "all new and reissued" consumer debit cards and represented that the result would be materially improved protection against fraud. For example, the Bank represented that cards with the EMV chip would be far more difficult to counterfeit or copy than cards using outdated magnetic stripe technology.

19.     Despite knowing that magnetic stripe technology was outdated and far less secure than EMV chip technology, the Bank unilaterally decided not to use EMV chips on the debit cards it issued to Plaintiffs and class members but instead to use the far less secure, outdated and outmoded magnetic stripe technology, thus subjecting those debit card recipients to a far greater risk of third-party fraud than the Bank subjects any of its other debit or credit card account holders to. On information and belief, that decision to use magnetic stripe technology has resulted in Plaintiffs and class members being deprived by fraud of millions of dollars of EDD benefits to which they are legally entitled.

20.     EMV chip technology is dynamic, meaning the data encoded on those chips can be modified and updated, allowing the validity of each transaction to be confirmed through an electronic signature that is unique to each transaction. Magnetic stripe technology, by contrast, is static, meaning the card holder's personal data (such as name, account number and card

1   expiration date) is stored on the card and transmitted when the card is swiped through a card

2   reader. Cards using such magnetic stripe technology are susceptible to being hacked, if a third

3   party gains access to the issuing financial institution's or a retailer's or other point-of-sale

4   entities' data, or to being skimmed, a process by which an unauthorized third party electronically

5   captures in real time the account information conveyed during a consumer transaction using

6   magnetic stripe technology.

7   21.     Bank of America represented to Plaintiffs and class members, on its web page and its

8   cardholder agreements, that those debit card holders would not be responsible for unauthorized

9   transactions on their EDD debit card accounts because the Bank had a "Zero Liability" policy

10  that promised each such debit card holder that the Bank would fully protect them against

11  fraudulent transactions and would reimburse them for unauthorized card transactions.  The Bank

12  also represented to Plaintiffs and class members that they should place a telephone call to the

13  Bank if they suspected fraud, that customer services representatives would be available 24/7, and

14  that the Bank would determine whether a particular transaction was unauthorized within 10

15  business days after being put on notice of possible fraud, except that if it took the Bank longer

16  than 10 days (but in no event longer than 45 days) to investigate a claim of fraud, the Bank "will

17  credit your Account within 10 business days for the amount you think is in error, so that you will

18  have the money during the time it takes us to complete our investigation."

19  22.     On information and belief, thousands of Bank of America EDD debit card holders have

20  been the victims of fraud since the fall of 2020, resulting in tens of millions of dollars having

21  been stolen from their accounts, including through fraudulent ATM withdrawals such as

22  Plaintiffs Mathews and Oosthuizen experienced.

23  23.     Every day between September 24-28, 2020, an authorized third party or unauthorized

24  third parties withdrew $1,000 from Plaintiff Oosthuizen's Bank of America EDD account, using

25  different Bank of America ATMs in the Los Angeles area. Oosthuizen did not make the

26  withdrawals himself, did not authorize the withdrawals, and, in fact, only learned about the

27  withdrawals when he logged into his Bank of America EDD online account to find that $5,000

28  was missing.

24.    Oosthuizen has always kept in his wallet his original, Bank of America-issued EDD card. He does not know how unauthorized third parties gained access to his debit account, but believes his card was fraudulently cloned.

25.    The Bank did not notify Oosthuizen of this fraud, notwithstanding the highly suspicious withdrawal of the maximum amount $1,000 per day for five straight days at different ATMs, which was a completely different pattern of withdrawal than Oosthuizen himself had ever undertaken.

26.    After discovering the fraudulent withdrawals from his account on September 29, 2020, Oosthuizen promptly suspended his debit card using the Bank of America online portal. The next day, Oosthuizen called Bank of America and – after waiting on hold for three hours – made a claim concerning the missing $5,000. A Bank of America representative named Kaitlyn told Oosthuizen he should wait to hear back from Bank of America concerning his claim.

27.    Approximately two weeks passed before Oosthuizen received a letter in the mail from Bank of America dated October 1, 2020 – just two days after Oosthuizen had reported the fraud – which summarily closed his claim while failing to provide any substantive information concerning any investigation Bank of America had made or purported to have made.

28.    Over the following months, Oosthuizen called Bank of America multiple times, typically waiting on hold for hours before, on occasion, reaching a live person. Oosthuizen spoke with a Bank of America representative named Tara on October 14, 2020. He requested that Bank of America re-open his case. Tara assured him during that call that his claim would be "escalated." Tara also requested that Oosthuizen fax Bank of America documentation concerning his claim.

29.    On November 5, 2020, Oosthuizen faxed to Bank of America a written statement regarding the theft, a police report information statement from when he made a report of the theft to the Los Angeles Sherriff's Department, and other documentation. Oosthuizen specifically requested that Bank of America provide him with whatever documentation that Bank of America had purportedly relied upon when it denied his fraud claim.

30.    To this date, Bank of America has not responded to Oosthuizen's November 5, 2020 letter, has not provided any documentation substantiating why it denied Oosthuizen's fraud

1    claim, and has not refunded any money to Oosthuizen's account, causing him severe hardship.

2    31.     On October 12, 2020, an authorized third party or unauthorized third parties withdrew

3    $1,000 from Plaintiff Mathews' Bank of America EDD account, using a Bank of America ATM

4    that Mathews has never herself used, leaving her with less than $500 in her account.

5    32.     Mathews has always kept her original, Bank of America-issued EDD card with her.

6    Mathews does not know how unauthorized third parties gained access to her debit account, but

7    believes her card was fraudulently cloned.

8    33.     The Bank never notified Mathews of the unauthorized withdrawal from her account. She

9    only realized that the theft occurred when she checked her account balance on October 18, 2020

10    and found it was below $500. She was horrified because she did not have enough money left to

11    cover her bare necessities.

12    34.     After discovering the fraudulent withdrawal of $1,000 from her account. Mathews on

13    October 18, 2020 telephoned Bank of America at the number on the back of her card, only to be

14    told that the claims department was not open that day. The next day, she called and, after waiting

15    on hold, made a claim.

16    35.     Approximately two weeks passed until Mathews received a letter in the mail from Bank

17    of America summarily closing her claim while failing to provide any other information.

18    36.     Over the following months, Mathews called Bank of America multiple times, typically

19    waiting on hold for hours before, on occasion, reaching a live person.

20    37.     On November 5, 2020, Mathews faxed to Bank of America a written statement regarding

21    the theft, a police report information statement from when she made a report of the theft to the

22    Los Angeles Sherriff's Department, and other documentation. Mathews specifically requested

23    that Bank of America provide her with the documentation that the Bank purportedly relied upon

24    when it denied her fraud claim.

25    38.     To this date, Bank of America has not responded to Mathews' November 5, 2020 letter,

26    has not provided any documentation substantiating why it denied her fraud claim, and has not

27    refunded any money to Mathews' account. Instead, Bank of America has frozen Ms. Mathews'

28    account, making it impossible for her to access her existing, previously authorized EDD benefits

1    or to receive the additional benefits to which she is entitled.

2    39.    In short, Plaintiffs followed the instructions in their account agreement and made

3    consistent, diligent efforts to recover the funds fraudulently stolen from her account by multiple

4    telephone calls and faxed documentation. In spite of this, Bank of America's customer service

5    department offered Plaintiffs no meaningful response or assistance, and indeed has stymied their

6    efforts at nearly every turn.

7    40.    On information and belief, thousands of other class members have similarly reported not

8    receiving any notification or communication from Bank of America regarding fraudulent

9    transactions in their accounts, and instead discovered it themselves. Bank of America's fraud

10   monitoring and controls have proven—in direct contradiction to the Bank's representations to

11   Plaintiffs, class members, and the State—to be completely inadequate and ineffectual. As a result

12   of the conduct and omissions alleged herein, and despite the Bank's "Zero Liability" policy,

13   Plaintiffs and similarly situated class members have been deprived of EDD benefits to which

14   they are entitled by law for weeks or months, causing them great, immediate, and irreparable

15   harm.

16                      **V.    CLASS ACTION ALLEGATIONS**

17   41.    Plaintiffs bring this class action lawsuit individually and as a class action pursuant to

18   Federal Rule of Civil Procedure 23, seeking declaratory and injunctive relief and damages on

19   behalf of a class defined as follows (the "Class"):

20       All persons who were issued or who used a Bank of America debit card for the
         purpose of accessing EDD benefits deposited into a Bank of America account, at
21       any time from January 1, 2020 through the present ("Class Period").

22   42.    Plaintiffs reserve the right under Rule 23 to amend or modify the class descriptions

23   and/or add one or more subclasses based on information obtained after the filing of this

24   Complaint.

25   43.    This action has been brought and may properly be maintained as a class action against

26   Bank of America pursuant to the following provisions of Rule 23.

27            a.   **Numerosity (Rule 23(a)(1))**: The members of the Class are so numerous that

28                 their individual joinder is impracticable. The Bank provided Bank of America

                                    11
                            Class Action Complaint

EDD debit cards with outdated magnetic stripe technology to hundreds of thousands of EDD benefits recipients during the Class Period. The identities of, and contact information for, those individuals may readily be obtained through Bank of America's business records or the business records of its affiliated entities.

b. **Commonality and Predominance (Rule 23(a)(2) and 23(b)(3))**: Many questions of law and fact are common to the Class. These questions predominate over any questions affecting only individual class members. These common legal and factual issues include, but are not limited to:

i. Whether the Bank owed a duty of care to Plaintiffs and Class Members, including by nature of the fiduciary relationship between the Bank and its debit card holders or because of the contracts between the Bank and its debit card account holders or the Bank and EDD.

ii. Whether Plaintiffs and Class Members are third-party beneficiaries of the contract between the Bank and EDD.

iii. Whether the Bank breached its duties to Plaintiffs and Class Members, including by using outmoded fraud-protection technology on its debit cards, not adequately monitoring accounts for suspicious activity, not conducting appropriate follow-up or investigation when claims of fraud were made, and not making Plaintiffs and Class Members whole, including by complying with the Bank's "Zero Liability" policy.

iv. Whether the Bank should be enjoined from freezing the EDD benefit accounts of EDD debit card account holders or from failing to take the reasonable steps necessary to avoid causing additional future harm to Plaintiffs and Class members as the result of the acts and omissions alleged herein.

v. Whether the Bank should pay damages or provide restitution, reimbursement, and/or other relief to EDD debit card account holders.

Class Action Complaint

c. **Typicality (Rule 23(a)(3))**: Plaintiffs' claims are typical of the claims of the members of the putative Class. Both Plaintiffs, like all other members of the putative Class, sustained economic and other damages as a result of Defendant's wrongful acts and omissions as alleged herein. The representative Plaintiffs and all similarly situated members of the putative Class were and are similarly or identically harmed by the Bank's same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct as alleged herein.

d. **Adequacy of Representation (Rule 23(a)(4))**: The representative Plaintiffs will fairly and adequately represent and protect the interests of the putative Class members and have retained competent and qualified counsel with extensive experience in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiffs and the members of the putative Class that would make class certification inappropriate. Counsel for the putative Class will vigorously prosecute the claims of all putative Class members.

44. This action is properly maintained as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure for the following reasons:

a. **Class Action Status (Rule 23(b)(1))**: Class action status is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by each of the thousands of putative Class members would create a risk of establishing incompatible standards of conduct for Defendant. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by putative Class members would create a risk of adjudication with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action or would substantially impair or impede their ability to protect their interests.

b. **Declaratory and Injunctive Relief (Rule 23(b)(2))**: Certification under Rule 23(b)(2) is warranted because Defendant acted or refused to act on grounds

generally applicable to the putative Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the putative Class as a whole.

c.   **Superiority (Rule 23(b)(3))**: Certification under Rule 23(b)(3) is appropriate because questions of law or fact common to putative Class members predominate over any questions affecting only individual members, and because class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy.

d.   The Class is ascertainable, and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each Class member were infringed or violated in the same or similar fashion.

## VI.   CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT,
### Cal. Civil Code §§ 1798.100 et seq.)

45.   Plaintiffs repeat and incorporate by reference each and every allegation set forth above, as though fully set forth here.

46.   The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code §§ 1798.100 et seq., provides a private right of action to consumers whose personal information has been subjected to unauthorized access and exfiltration, theft, or disclosure as a result of a defendant business's breach of its duty to take reasonable steps to protect that information.

47.   Plaintiffs and Class members are "consumers" as defined in the CCPA.

48.   Defendant Bank of America is a "business" as defined in the CCPA.

49.   Bank of America directly or indirectly collected Plaintiffs' and Class members' personal information as defined in Cal. Civ. Code § 1798.81.5(d)(1)(A), including but not limited to Plaintiffs' and Class member's first names or first initials, last names and account numbers or credit or debit card numbers, in combination with any required security codes, access codes, or passwords that would permit access to an individual's financial accounts.

50.   On information and believe, Plaintiffs' and Class members' personal information was

1   collected, stored, and/or transmitted by Bank of America in a nonencrypted and nonredacted

2   form or in some other form that permitted unauthorized third parties to access that information in

3   violation of the CCPA.

4   51.    As a business, Bank of America had a duty under CCPA to implement and maintain

5   reasonable security procedures and practices appropriate to the nature of Plaintiffs' and Class

6   members' personal information.

7   52.    Bank of America breached its duty to implement and maintain reasonable security

8   procedures and practices appropriate to the nature of Plaintiffs' and Class members' personal

9   information by, among other things, issuing EDD debit cards to Plaintiffs and Class members

10   with magnetic stripes but without EMV chip technology.

11   53.    On information and belief, Bank of America further failed to implement and maintain

12   reasonable security measures by transferring information regarding Plaintiffs and Class

13   members' EDD debit card to, and storing it on, unsecured or inadequately secured data storage

14   devices, including at EDD.

15   54.    As a direct and proximate result of Bank of America's failure to implement and maintain

16   reasonable security procedures and practices appropriate to the nature of Plaintiffs' and Class

17   members' personal information, Plaintiffs and Class members suffered unauthorized access and

18   exfiltration, theft, or disclosure of their nonencrypted and nonredacted personal information.

19   Plaintiffs and Class members never authorized such disclosure of their personal information.

20   55.    Bank of America knew or should have known that issuing EDD debit cards with

21   magnetic stripes but without EMV chip technology was not a reasonable security procedure or

22   practice appropriate to the nature of Plaintiffs and Class members' personal information and that

23   a data breach resulting in the unauthorized access and exfiltration, theft, or disclosure of

24   Plaintiffs' and Class members' personal information was clearly foreseeable.

25   56.    As a direct and proximate result of the unauthorized access and exfiltration, theft, or

26   disclosure of Plaintiffs' and Class members' nonencrypted and nonredacted personal

27   information, Plaintiffs and Class members were injured and lost and/or continue to lose money

28   or property, including but not limited to the monetary value of unauthorized transactions on the

1   EDD debit cards issued by Defendant, the loss of Plaintiffs and Class members' protected

2   privacy interests in the confidentiality and privacy of their personal information, nominal

3   damages, and additional losses as described above.

4   57.     Plaintiffs and Class members seek relief under Cal. Civ. Code § 1798.150(a), including

5   but not limited to recovery of actual damages, injunctive relief, declaratory relief, its costs of

6   suit, attorney's fees pursuant to Cal. Code Civ. Proc. § 1021.5 or other appliable law, and any

7   other relief the court deems proper.

8   58.     On or about January 26, 2021, Plaintiffs submitted a notice to Bank of America pursuant

9   to Cal. Civ. Code § 1798.150(b), informing the Bank of its violations of the CCPA. If the Bank

10  does not cure those violations as required by the CCPA within 30 days after such notice,

11  Plaintiffs will amend this Complaint to include a request for statutory damages pursuant to the

12  CCPA.

13                          **SECOND CLAIM FOR RELIEF**
                  **(VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT,**
14                          **Cal. Civil Code §§ 1798.80 et seq.)**

15  59.     Plaintiffs repeat and incorporate by reference each and every allegation set forth above,

16  as though fully set forth here.

17  60.      To ensure that personal information about California residents is protected, the

18  California Legislature enacted the California Customer Records Act, which requires businesses

19  suffering a data breach to promptly notify all persons whose "unencrypted personal information

20  was, or is reasonably believed to have been, acquired by an unauthorized person."  Cal. Civ.

21  Code. § 1798.82.

22  61.     Defendant Bank of America is a "business" within the meaning of Civil Code

23  § 1798.80(a).

24  62.     Plaintiffs and Class members are "individual[s]" within the meaning of the Civil Code

25  § 1798.80(d).  Pursuant to Civil Code §§ 1798.80(e) and 1798.82(h), "personal information"

26  includes an individual's name, Social Security number, driver's license or state identification

27  card number, and debit card and credit card information.  "Personal information" under Civil

28  Code § 1798.80(e) also includes address, telephone number, employment, and employment

1    history.

2    63.    Defendant maintains computerized data that includes personal information of Plaintiffs

3    and Class members.  The security of that data was breached, resulting in unauthorized third

4    parties fraudulently accessing of Plaintiffs' and Class members' accounts and Defendant's

5    subsequent freezing of those accounts.

6    64.    The notification of such a breach required by Cal. Civ. Code. § 1798.82 must be made

7    "immediately following discovery."

8    65.    By failing to promptly notify all affected Plaintiffs and Class members that their

9    unencrypted personal information had been acquired (or was reasonably believed to have been

10   acquired) by unauthorized persons, Defendant violated Civil Code § 1798.82.

11   66.    The notification required by Cal. Civ. Code. § 1798.82 must be made in plain language,

12   list the information that was or is reasonably believed to have been compromised, identify the

13   date and time of the breach, state whether law enforcement delayed the notice, provide a

14   "general description of the breach incident," and provide the "toll-free telephone numbers and

15   addresses of the major credit reporting agencies if the breach exposed a social security number or

16   a driver's license or California identification card number."

17   67.    Defendant was required to provide the notification required by Cal. Civ. Code. § 1798.82

18   to over five hundred persons and was required to provide a sample copy of its notification to the

19   California Attorney General.

20   68.    Defendant did not provide such notice, and thus did not provide notice "in the most

21   expedient time possible and without unreasonable delay," as required by Cal. Civ. Code.

22   § 1798.82.

23   69.    Defendant's conduct as alleged herein was reckless and/or deliberate.

24   70.    Plaintiffs and Class members were injured by Defendant's violations of Cal. Civ. Code

25   § 1798.82.  Defendant's exposure of Plaintiffs' and Class members' personal information to

26   unauthorized third parties resulted in Plaintiffs and Class members losing access to EDD benefits

27   to which they are entitled, through fraud and/or Defendant's freezing of their accounts; exposed

28   Plaintiffs and Class members to increased risk of identity theft; and reduced the value of

1  Plaintiffs' and Class members' personal information.  Defendant's failure promptly to notify

2  Plaintiffs and Class members of the exposure of their personal information to unauthorized third

3  parties as required by § 1798.82 prevented Plaintiffs and Class members from taking

4  preventative measures to prevent or mitigate these harms, including but not limited to by

5  withdrawing or transferring funds from their accounts before those funds were fraudulently

6  removed or before those accounts were frozen by Defendant, and by closing accounts and

7  placing credit alerts on their accounts to reduce the risk of identity theft.

8  71.    Plaintiffs and Class members seek all remedies available under Cal. Civ. Code § 1798.84,

9  including, but not limited to, actual damages and injunctive relief.

10
**THIRD CLAIM FOR RELIEF**
**(VIOLATIONS OF BUSINESS & PROFESSIONS CODE §17200 et seq.)**
11

12  72.    Plaintiffs repeat and incorporate by reference each and every allegation set forth above,

13  as though fully set forth here.

14  73.    California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or

15  fraudulent business act or practice." Cal. Bus. & Prof Code § 17200, *et seq.*

16  74.    Bank of America's "unfair" acts and business practices include, among other things, the

17  Bank's: (a) failing to maintain, store, use, or transfer Plaintiffs and Class members EDD debit

18  card and account information in a secure manner; (b) falsely representing to Plaintiffs, Class

19  members, and EDD that it would provide "best in-class" fraud monitoring while failing to

20  protect benefits recipients, including Plaintiffs and Class members from fraud, including by

21  failing to use readily available EMV chip technology on its debit cards rather than outmoded

22  magnetic stripe technology that the Bank knew was susceptible to fraud; (c) failing to provide

23  reasonable or adequate customer service assistance to Plaintiffs and other Class members who

24  complained of fraud, despite representing to them that such assistance would be available "24/7";

25  (d) failing to adequately investigate and resolve Plaintiffs' and Class members' claims of

26  unauthorized transactions in a timely manner despite the Bank's promised "Zero Liability"

27  policy for unauthorized transactions; and (e) failing to extend provisional credit to Plaintiffs and

28  Class members in cases where the Bank was unable to timely investigate and resolve fraud

1    claims.

2    75.      Bank of America's acts, omissions, and conduct as alleged herein are "unfair" under the

3    UCL because those acts, omissions, and conduct offend public policy and constitute immoral,

4    unethical, oppressive, and unscrupulous activities that caused substantial injury, including to

5    Plaintiffs and Class members. The harm caused by Bank of America's conduct outweighs any

6    potential benefits attributable to such conduct. There were reasonably available alternatives to

7    further Defendant's legitimate business interests, including issuing EDD debit cards with EMV

8    chips and creating and implementing procedures and resources adequate to timely resolve reports

9    of fraudulent activity on prepaid EDD accounts.

10   76.      Bank of America has engaged in "unlawful" acts and business practices by violating

11   multiple laws, including the California Consumer Privacy Act, Cal. Civil Code §§ 1798.100 et

12   seq., the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801 et seq., the California Financial

13   Information Privacy Act, Cal. Fin. Code §§ 4050 et seq., and the California Consumer Records

14   Act, Cal. Civil Code §§ 1798.80 et seq.

15   77.      Bank of America has engaged in "fraudulent" acts and business practices because its

16   false representations to EDD cardholders that they would have "Zero Liability" for unauthorized

17   transactions and that customer service representatives would be available 24 hours a day, 7 days

18   a week were likely to deceive, and did deceive, Plaintiffs and Class members into using Bank of

19   America's EDD debit card services to receive EDD benefits (instead of, for example, opting to

20   receive EDD benefits by paper check) and into using Bank of America's EDD debit card

21   services with substantially less vigilance than they otherwise would have, had they known about

22   Defendant's fraudulent acts and business practices and false representations as alleged herein.

23   78.      As a result of Bank of America's violations of the UCL, Plaintiffs and Class members are

24   entitled to restitution and other equitable relief, including injunctive relief (a) prohibiting Bank of

25   America from continuing its unfair, unlawful, and deceptive business practices, and (b) requiring

26   Bank of America to take reasonable measures to prevent future unauthorized use of EDD debit

27   cards and accounts and to ensure timely and adequate processing of EDD cardholders' claims

28   regarding unauthorized or fraudulent use of their EDD debit cards or accounts.

79.     As a result of Bank of America's violations of the UCL, Plaintiffs and Class members have suffered injury in fact and lost money or property, including but not limited to the funds lost to fraud that have not been reimbursed, fees paid to Bank of America, and lost interest that would have accrued on funds during the period of time when the funds were unavailable due to Bank of America's failure to timely and adequately investigate claims of unauthorized transactions and other violations of the UCL.

**FOURTH CLAIM FOR RELIEF**
**(NEGLIGENCE AND NEGLIGENCE PER SE)**

80.     Plaintiffs repeat and incorporate by reference each and every allegation set forth above, as though fully set forth here.

81.     Bank of America owed a duty to Plaintiffs and other Class members to act reasonably to: (a) safeguard their EDD benefits, including UI benefits; (b) protect them from fraudulent access by unauthorized third parties to the funds paid into their EDD benefit accounts, including by timely and accurately warning them of suspicious activity in those accounts; (c) protect them from unreasonable interference with their right and ability to continue to collect, receive, and access the EDD benefits to which they were entitled; (d) ensure that the Bank's customer service staffing levels, technology, and operations were capable of providing Plaintiffs and Class members reasonably timely and effective customer service, including to address those customers' concerns about fraudulent or unauthorized transactions related to their EDD debit cards or accounts; (d) provide Plaintiffs and Class members reasonable and adequate notice that their EDD debit cards and accounts were at risk of being subject to unauthorized use or had been subjected to unauthorized use; (e) timely and adequately investigate and resolve Plaintiffs' and Class members' claims regarding unauthorized or fraudulent transactions; and (f) extend to Plaintiffs and Class members provisional credit in cases where Bank of America failed to timely resolve their fraud-related claims.

82.     Bank of America breached its duty to Plaintiffs and Class members by, among other things: (a) failing to transfer or store their EDD cardholder and account information in a secure manner; (b) failing to issue Plaintiffs and Class members EDD debit cards with EMV chips,

despite having for years been well-aware of the risks associated with magnetic stripe technology; (c) failing to protect Plaintiffs and Class members from fraudulent access by unauthorized third parties to the funds paid into their EDD benefit accounts, including by providing timely and accurately warnings of suspicious activity in those accounts; (d) failing to respond to the dramatic increase in EDD benefits and EDD benefits recipients caused by or related to the COVID-19 pandemic by issuing EDD debit cards with EMV chips to all new and existing EDD cardholders and by taking other reasonably prudent security measures to prevent fraudulent and unauthorized transactions; (e) failing to ensure its customer service operation was capable of providing reasonably timely and effective assistance to Plaintiffs and Class members, including when they were victims of fraudulent or unauthorized transactions; (f) failing to give reasonable and adequate notice to Plaintiffs and Class members that their EDD benefits were and remain at risk of being vulnerable to fraudulent and unauthorized transactions; (g) failing to process EDD cardholders' claims regarding fraudulent or unauthorized transactions in a reasonably timely and adequate manner; and (h) failing to extend provisional credit to Plaintiffs and Class members when Bank of America failed to resolve their claims regarding fraudulent or unauthorized transactions in a reasonably timely and adequate manner.

83.    Bank of America's misconduct concerning its failure to safeguard EDD cardholders' funds is inconsistent with industry standards, which prescribe using EMV chip technology in debit cards.

84.    Bank of America's misconduct concerning its failure to adequately protect Plaintiffs' and Class members' data is inconsistent with its obligations under the California Consumer Privacy Act, Cal. Civil Code §§ 1798.100 et seq., the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801 et seq., the California Financial Information Privacy Act, Cal. Fin. Code §§ 4050 et seq., the California Consumer Records Act, Cal. Civil Code §§ 1798.80 et seq., and customary industry practice, as well as its own policies and procedures for its *non*-EDD debit and credit card accounts, each of which are secured through  EMV chip technology. Plaintiffs and Class members are within the classes of persons that each of the aforementioned statutes are designed to protect, and Bank of America's conduct caused the precise harm to Plaintiffs and Class

1    members that each statute was designed to prevent.

2    85.    Bank of America's failure to comply with the California Consumer Privacy Act, Cal.

3    Civil Code §§ 1798.100 et seq., the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801 et seq., the

4    California Financial Information Privacy Act, Cal. Fin. Code §§ 4050 et seq., and the California

5    Consumer Records Act, Cal. Civil Code §§ 1798.80 et seq. constitutes negligence per se.

6    86.    The harms inflicted upon Plaintiffs and other Class members were reasonably foreseeable

7    because the Bank was and is well aware of the security risks associated with magnetic stripe

8    technology, and knew or should have known that its customer service resources and/or

9    procedures were insufficient to consider, evaluate, and appropriately resolve issues stemming

10   from the significant increase in EDD benefits and EDD benefits recipients due to the sharp rise

11   in unemployment in the State of California caused by or related to the COVID-19 pandemic, as

12   well as the well-publicized sharp rise in financial fraud during the COVID-19 pandemic, both of

13   which would foreseeably lead to an increased demand for customer service by Plaintiffs and

14   Class members for all purposes, including for the purpose of reporting and attempting to resolve

15   claims of fraudulent or unauthorized transactions.

16   87.    As a direct and proximate result of Bank of America's misconduct, Plaintiffs and Class

17   members have been deprived of their EDD benefits and have failed to receive accrued interest

18   thereon.

19                          **FIFTH CLAIM FOR RELIEF**
                           **(BREACH OF FIDUCIARY DUTY)**
20

21   88.    Plaintiffs repeat and incorporate by reference each and every allegation set forth above,

22   as though fully set forth here.

23   89.    Plaintiff and Class members, as public benefits recipients, are members of a uniquely

24   vulnerable segment of the population, who depend on the prompt and accurate payment of the UI

25   and other benefits to meet their basic necessities of life, including food and shelter.

26   90.    When Plaintiffs and Class members submitted their claims for UI and other benefits to

27   EDD and were found eligible to receive those benefits, they were not given the choice of

28   receiving those benefits through debit cards issued by any financial institution other than Bank of

1    America. Bank of America holds the exclusive contract to implement and administer EDD's

2    public benefits programs and is the only financial institution authorized to pay EDD benefits to

3    program beneficiaries through the use of bank-issued debit cards.

4    91.    In order to obtain the Bank-issued debit cards needed to access their EDD accounts,

5    which is the default option for receiving payment of EDD benefits, Plaintiffs and Class members

6    were required to provide the Bank with a broad range of private and confidential information,

7    including information pertaining to their income, public benefits, employment status, finances,

8    social security numbers, addresses, emails, telephone numbers, and all debit card account

9    information.

10   92.    The Bank, in turn, was provided access to all such personal confidential and financial

11   information from Plaintiffs and Class members, which the Bank stored and maintained,

12   purportedly in confidence, and which the Bank was required to strictly maintain in confidence

13   without public access or other disclosure absent the debit card account holders' written consent.

14   93.    Plaintiffs and Class members, as EDD recipients who accepted the default option of

15   receiving their EDD benefits payments through Bank of America debit cards, were repeatedly

16   assured that the Bank's debit cards and their debit card account balances were purportedly secure

17   from fraud, and reposed their trust and confidence in the Bank at all material times, including

18   with respect to all of their personal, confidential and financial information and with respect to the

19   Bank's ongoing maintenance of that information in confidence, without secretion or divulgence

20   absent Plaintiffs' and Class members' express written consent.

21   94.    Defendant owes and continues to owe a fiduciary duty to Plaintiff and Class members.

22   By virtue of its position as the financial institution charged with implementing the EDD benefits

23   program, which gave the Bank unbridled access to Plaintiff's and Class members' personal,

24   confidential, and financial information, and because of the Bank's superior knowledge, business

25   responsibilities and duties – including those provided by law or statute – and its absolute ability

26   to control or otherwise manipulate Plaintiffs' and Class members' debit card account data in its

27   system, Defendant assumed a fiduciary duty to Plaintiff and Class members to secure and

28   maintain the personal, confidential, and financial information that it received from Plaintiffs and

1   Class members, free from unauthorized intrusion, theft or other disclosure.

2   95.      As a result of this relationship of trust and confidence, the highly confidential nature of

3   the records and data pertaining to Plaintiffs' and Class members' debit cards accounts, and

4   Defendant's duties and obligations respecting maintaining the privacy of such information,

5   Defendant owed to Plaintiff and Class members the highest degree of loyalty, honesty, fidelity,

6   trust and due care in its fiduciary obligations with respect to securing and maintaining the

7   privacy of their personal, confidential, and financial data in Defendant's possession.  In order to

8   comply with such duty, Defendant was required to use its utmost ability to protect, preserve and

9   secure such private data and confidential information from unauthorized access, fraud, or theft

10  and to take all necessary steps in order to do so, including encrypting such information and

11  deploying sufficient data access security controls, EVM chips, and other measures, to frustrate

12  and disable hackers, skimmers, cloners, or others from accessing such information for their

13  personal profit or unlawful goals.

14  96.      Based on the acts or omissions alleged above, Defendant breached its fiduciary duty to

15  Plaintiff and Class members by failing to take all adequate and necessary steps to preserve,

16  secure and maintain the confidentiality and privacy of their debit card and other personal,

17  confidential, and financial data.  Defendant independently breached its fiduciary duties to

18  Plaintiff and Class members by failing to timely, fully and adequately disclose that it had not

19  taken the necessary steps to protect such information from unauthorized or fraudulent access and

20  theft and that such information was at a heightened risk of breach by virtue of Defendant's data

21  security failings and policies.

22  97.      Defendant recklessly or knowingly breached its fiduciary duty and consciously created an

23  environment that made its data systems and Plaintiffs' and Class members' debit card accounts

24  and funds and access to EDD benefits prey to criminal hackers and thieves. Alternatively, and

25  without prejudice to the foregoing, Defendant also breached its fiduciary duty by placing its own

26  desire to achieve greater profits ahead of the privacy and data security interests of Plaintiff and

27  Class members.

28  98.      As a direct and proximate result of Defendant's violations of its fiduciary duty, Plaintiff

24

1   and Class members have been injured and have suffered and will continue to suffer economic

2   and non-economic losses in an amount to be determined according to proof at trial.

3   <center>**SIXTH CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**</center>

4

5   99.     Plaintiffs repeat and incorporate by reference each and every allegation set forth above,

6   as though fully set forth here.

7   100.    Plaintiffs and Class members entered into contracts requiring the Bank to administer

8   EDD benefits to them through prepaid debit cards.

9   101.    Those contracts provide, among other things: "Under the Bank of America 'zero liability'

10   policy, you may incur no liability for unauthorized use of your Card up to the amount of the

11   transaction, provided you notify us within a reasonable time of the loss or theft of your Card,

12   Card number or PIN or its unauthorized use, subject to the following terms and conditions."

13   102.    Those contracts provide, among other things: "We will determine whether an error

14   occurred within 10 business days after we hear from you — and will correct any error promptly.

15   If we need more time, however, we may take up to 45 days to investigate your complaint or

16   question. If we decide to do this, we will credit your Account within 10 business days for the

17   amount you think is in error, so that you will have the money during the time it takes us to

18   complete our investigation."

19   103.    Plaintiffs and Class members performed all or substantially all of the material

20   requirements that the contracts with Bank of America imposed on them and fulfilled all

21   conditions precedent to Bank of America's performance, including, among other things, by

22   contacting or attempting to contact Bank of America to reimburse fraudulently appropriated

23   funds within the time specified in the account agreement.

24   104.    Bank of America failed to perform as promised in the contract by, among other things:

25   (a) failing to timely investigate and resolve claims of unauthorized card use; (b) failing to

26   reimburse Plaintiffs and Class members for unauthorized card use or provide provisional credit

27   within 10 business days; and (c) failing to limit EDD cardholders' liability.

28   105.    Plaintiffs and Class members were harmed by Bank of America's conduct and have

<center>25</center>
<center>Class Action Complaint</center>

1  suffered actual damages in an amount equal to the difference in the value of the banking services

2  for which they provided valuable consideration and the banking services they received.

3                    **SEVENTH CLAIM FOR RELIEF**
                   **(BREACH OF IMPLIED CONTRACT)**

4

5  106.    Plaintiffs repeat and incorporate by reference each and every allegation set forth above,

6  as though fully set forth here.

7  107.    Bank of America agreed to and was obligated to take reasonable steps to ensure that

8  Bank's EDD debit card accounts were secure against unauthorized transactions and that any

9  claims regarding unauthorized transactions were adequately investigated and resolved.

10 108.    All parties understood that such protections and customer service obligations were

11 integral and essential to Bank of America's business.

12 109.    Bank of America was obligated to provide Plaintiffs and Class members EDD debit card

13 services that were suitable for their intended purpose of preserving and accessing EDD benefits

14 as needed, rather than debit card services that failed to take reasonable steps to safeguard their

15 money, warn or notify them in the event that their EDD benefits were at risk of unauthorized use,

16 or adequately investigate or resolve claims regarding unauthorized transactions.

17 110.    Bank of America did not take reasonable steps to protect Plaintiffs' and Class members'

18 deposited funds from unauthorized transactions or to adequately investigate or resolve claims

19 regarding unauthorized transactions. In fact, Bank of America willfully violated those interests

20 by electing to issue EDD prepaid debit cards with outdated magnetic stripe technology, which it

21 knows to be uniquely vulnerable to fraud, in lieu of EMV chip technology, which has been

22 included in Bank of America consumer debit cards for over six years for the express purpose of

23 protecting against fraud.

24 111.    Because Bank of America failed to take reasonable steps to protect EDD prepaid debit

25 card holders' funds from being appropriated through unauthorized transactions and failed to take

26 reasonable steps to timely or adequately respond to claims regarding unauthorized transactions,

27 Bank of America breached its implied contracts with Plaintiffs and Class members.

28 112.    Bank of America's failure to fulfill its obligations to take reasonable steps to protect EDD

1   prepaid debit card holders' funds from being appropriated through unauthorized transactions, and

2   its failure to take reasonable steps to timely or adequately respond to claims regarding

3   unauthorized transactions resulted in Plaintiffs and Class members receiving banking services

4   that were of less value than they provided consideration for.

5   **EIGHTH CLAIM FOR RELIEF**
    **(BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)**
6

7   113.    Plaintiffs repeat and incorporate by reference each and every allegation set forth above,

8   as though fully set forth here.

9   114.    There is a covenant of good faith and fair dealing implied in every contract and every

10  implied contract. This implied covenant requires each contracting party to refrain from doing

11  anything to injure the right of the other to receive the benefits of the agreement. To fulfill its

12  covenant, a party must give at least as much consideration to the interests of the other party as it

13  gives to its own interests.

14  115.    The Bank's covenant of good faith and fair dealing in its debit card holder account

15  agreements with Plaintiffs and Class members, obligated the Bank, at a minimum, (a) to

16  safeguard Plaintiffs' and Class members' EDD benefits; (b) to ensure that its customer service

17  operation was capable of providing reasonably adequate and effective assistance to EDD

18  cardholders who experienced or claimed to experience fraud on their debit cards; (c) to warn or

19  notify Plaintiffs and Class members if their EDD benefits were at risk of being subject to

20  unauthorized use; (d) to timely and adequately investigate and resolve claims of unauthorized

21  transactions; and (e) to extend provisional credit in cases where fraud claims are not timely

22  resolved.

23  116.    Bank of America breached the implied covenant of good faith and fair dealing by, among

24  other things: (a) failing to issue EDD debit cards with EMV chip, despite having for years been

25  aware of the risks associated with magnetic stripe technology; (b) failing to respond to the rise in

26  demand for EDD benefits caused by or related to the COVID-19 pandemic by issuing chip cards;

27  (c) failing to ensure its customer service operation was capable of providing effective assistance

28  to EDD cardholders who experience fraud on their debit card; (d) failing to warn or notify EDD

1    cardholders that their EDD benefits were and remain at risk of being subject to unauthorized use;

2    (e) failing to timely or adequately process EDD cardholders' claims regarding unauthorized

3    transactions; and (f) failing to extend provisional credit in cases where fraud claims are not

4    timely resolved.

5    117.   As a direct and proximate result of Bank of America's breaches of the implied covenant

6    of good faith and fair dealing, Plaintiffs and other Class members have suffered actual losses and

7    damages.

8                              **NINTH CLAIM FOR RELIEF**
                    **(BREACH OF CONTRACT (THIRD-PARTY BENEFICIARIES))**
9

10   118.   Plaintiffs repeat and incorporate by reference each and every allegation set forth above,

11   as though fully set forth here.

12   119.   Bank of America and the State of California EDD entered into a contract requiring Bank

13   of America to administer EDD benefits to Plaintiffs and Class members through prepaid debit

14   cards.

15   120.   The Bank represented to EDD, in seeking to obtain its contract and as a material term of

16   that contract, that the Bank would protect the EDD benefits provided by the State by

17   implementing strict and secure anti-fraud measures and to provide adequate customer service to

18   EDD debit card holders sufficient to ensure that any claims of fraud would be promptly

19   considered, fully and fairly investigated, and timely resolved without hardship or cost to

20   blameless debit card holders, including Plaintiffs and Class members.

21   121.   Plaintiffs and Class members are third-party beneficiaries of the contract between the

22   EDD and Bank of America.

23   122.   Plaintiff, Class members, and the EDD performed all or substantially all of the material

24   conditions imposed on them by the contract between the Bank and EDD and fulfilled any and all

25   conditions precedent to Bank of America's performance.

26   123.   Bank of America failed to perform as promised in the contract by, among other things:

27   (a) failing to take adequate steps to prevent fraud on EDD accounts, including but not limited to

28   its failure to incorporate EMV chips into EDD debit cards; (b) failing to timely investigate and

1    resolve claims of unauthorized card use; and (c) failing to timely reimburse Plaintiffs and Class

2    members for unauthorized card use or provide provisional credit within 10 business days.

3    124.    Plaintiffs and Class members were harmed by Bank of America's conduct and have

4    suffered actual damages in an amount equal to the difference in the value of the banking services

5    they provided valuable consideration for and the banking services they received.

6                                    **PRAYER FOR RELIEF**

7           WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class, pray for the

8    following relief:

9           (1)    For an order certifying the Class as defined above, appointing Plaintiffs as

10   representative for the Class, and appointing Plaintiffs' counsel as counsel for the Class;

11          (2)    For declaratory and injunctive relief prohibiting Defendant from engaging in the

12   misconduct described herein, including but not limited to ordering Defendant to take each of the

13   following corrective actions:

14                 (a)    Refund all Class members for the value of unauthorized transactions from

15                        their EDD accounts;

16                 (b)    Issue EDD debit cards with EMV chips to all current and future EDD card

17                        holders;

18                 (c)    Establish a customer service website, e-mail address, and telephone

19                        hotline that allows EDD cardholders to report unauthorized transactions

20                        and request reimbursement of any funds wrongfully or fraudulently paid

21                        from their account in a reasonably convenient and efficient manner;

22                 (d)    Respond to EDD cardholders' claims of unauthorized transactions and

23                        requests for reimbursement within a reasonable time; and

24                 (e)    Provide a reasonable opportunity for Class members to file claims

25                        regarding unauthorized transactions that otherwise would be deemed

26                        expired.

27          (3)    For an award of all recoverable compensatory, statutory, and other damages

28   sustained by Plaintiffs and the Class members, including disgorgement, unjust enrichment,

1  restitution, and all other available relief under applicable law, including but not limited to

2  accrued interest for the periods during which Plaintiffs and Class members were deprived of

3  funds in their EDD accounts due to unauthorized transactions;

4       (4)    For an award of punitive damages pursuant to applicable law;

5       (5)    For reasonable attorneys' fees and expenses as permitted by California Code of

6  Civil Procedure § 1021.5 and any other applicable statute or law;

7       (6)    For taxable costs;

8       (7)    For pre- and post-judgment interest as allowed by law; and

9       (8)    For any other relief the Court deems just.

10  **<u>JURY TRIAL DEMANDED</u>**

11  Plaintiffs demand a trial by jury on all issues so triable.

12  Dated: January 26, 2021     ALTSHULER BERZON LLP

13       KEMNITZER, BARRON & KRIEG, LLP

15  By:    /s/ *Adam McNeile*

16  ADAM MCNEILE
Counsel for Plaintiffs and Class members